In the Matter of B. F. HUMPHREY, Respondent.

(Filed 22 August, 1952.)

**1. Insane Persons § 4—**

In an inquisition of lunacy, conflicting evidence as to respondent's mental capacity to manage his affairs raises an issue for the jury, and the jury's negative finding in proceedings free from error is conclusive.

**2. Evidence § 51—**

The question of whether a witness should be qualified as an expert rests in the sound discretion of the trial court, and its ruling thereon, supported by evidence, will not be disturbed in the absence of abuse of discretion.

**3. Insane Persons § 4—**

A cerebral hemorrhage is a mental illness within the meaning of G.S. 35-1.1, and in an inquisition of lunacy in which there is no evidence of mental incapacity other than that resulting from a cerebral hemorrhage, a charge defining mental incapacity in the language of that statute is without error.

**4. Appeal and Error § 39f—**

A charge must be considered in its entirety with a view to harmonizing all its component parts, and when it is without prejudicial error when so construed an exception thereto will not be sustained.

Appeal by petitioner from *Carr, J.,* and a jury, November Term, 1951, Onslow. No error.

This proceeding was commenced by a petition filed under G.S. 35-2 by J. D. Heath, a nephew of the respondent.

Petitioner alleges that B. F. Humphrey is incompetent from want of understanding to manage his own affairs, by reason of mental disorders and physical weakness; that he is the owner of valuable real and personal properties, most of which is located in Onslow County; that in the operation of respondent's business, matters have developed which make it necessary for some person to take over the properties and operate the same in the interest and for the benefit of the respondent. Petitioner prays that an inquisition issue for the ascertainment of respondent's mental competency to manage his own affairs and that a guardian be appointed, if it be determined that the respondent is incompetent.

Notice was issued and duly served upon B. F. Humphrey. Thereafter, respondent filed an answer in which he denied the material allegations of the petition, asserted his competency to manage his own affairs, and prayed that the prayer of petitioner be denied and the proceeding be dismissed at the cost of petitioner.

The proceeding came on for hearing before the Clerk of Superior Court of Onslow County, and the following issue was submitted to the jury: "Is the said B. F. Humphrey incompetent from want of understanding to manage his affairs by reason of mental weakness?" The jury answered, "No."

Whereupon, the clerk adjudged that the respondent is competent to manage his own affairs, dismissed the action, and taxed petitioner with the costs.

Petitioner appealed to the Superior Court of Onslow County, where the proceeding came on for trial *de novo* at the November 1951 Term. Again, both petitioner and respondent offered evidence in support of their respective contentions. After the charge of the court, the following issue was submitted to and answered by the jury: "Is the said B. F. Humphrey incompetent from want of understanding to manage his own affairs?" Answer: "No." The court adjudged that respondent is competent to manage his own affairs and dismissed the action, taxing the costs against the petitioner.

From this judgment, petitioner appealed, assigning errors.

*Jones, Reed & Griffin and Summersill & Summersill for petitioner, appellant.*
*Warlick & Ellis and John R. B. Matthis for respondent, appellee.*

VALENTINE, J. At the trial in the Superior Court, both petitioner and respondent offered evidence tending to support their respective contentions. Three doctors and twelve lay witnesses testified for petitioner, while three doctors and eight lay witnesses testified for respondent. All of the testimony tended to show that respondent in 1938 had suffered a cerebral hemorrhage resulting in partial paralysis, and had suffered a similar attack in 1950. The doctors testifying for petitioner described the physical and, to some extent, the mental condition of respondent, but neither asserted an opinion that respondent was mentally incapable of managing his own affairs. However, several lay witnesses for petitioner advanced the opinion that respondent was mentally incompetent of managing his business affairs. On the other hand, each of the doctors who testified for respondent gave as his opinion that respondent was mentally capable of managing his own affairs. *Bruce v. Flying Service,* 234 N.C. 79, 66 S.E. 2d 312. In this opinion all of respondent's lay witnesses concurred. *In re Will of Brown,* 203 N.C. 347, 166 S.E. 72; *S. v. Witherspoon,* 210 N.C. 647, 188 S.E. 111. Hence, a jury question was squarely presented (*Clark v. Laurel Park Estates,* 196 N.C. 624, 146 S.E. 584; *Pendergraft v. Royster,* 203 N.C. 384, 166 S.E. 285) with the burden of the issue upon the petitioner. 28 A.J. 752; *Odom v. Riddick,* 104 N.C. 515, 10 S.E. 609.

Petitioner in the progress of the trial noted a number of exceptions, the first of which relates to the competency of Dr. W. E. Shoemaker to testify as an expert. The qualifications and competency of this witness were fully inquired into by the court and upon all the evidence introduced bearing upon this question, the court held that Dr. Shoemaker was an expert and allowed him to testify as such with respect to the mental condition of respondent. The question of competency of this witness rested in

the sound discretion of the presiding judge and is not reviewable on appeal, except upon a showing that the court abused its discretion, or upon a showing that there was no evidence to support the findings of the court. *Pridgen v. Gibson,* 194 N.C. 289, 139 S.E. 443; *S. v. Combs,* 200 N.C. 671, 158 S.E. 252; *LaVecchia v. Land Bank,* 218 N.C. 35, 9 S.E. 2d 489; *S. v. Smith,* 221 N.C. 278, 20 S.E. 2d 313; *S. v. Smith,* 223 N.C. 457, 27 S.E. 2d 114. It appears that the court's discretion in this respect was not abused and that his Honor's ruling was based upon sufficient evidence.

There was no evidence in the record that the respondent was an inebriate, that he suffered from senile dementia, or that he was mentally defective in any way except that which was caused by a cerebral hemorrhage resulting in partial paralysis. Hence it was unnecessary for the court to charge the jury upon any other phase of mental incapacity.

The method by which the court illustrated the meaning of "the greater weight of the evidence" could not, in view of the whole charge, have prejudiced the petitioner and his exception thereto is without substantial merit.

The petitioner complained of the definition used by the court in describing "mental incapacity." On this question the court said, "that incompetency from want of understanding to manage one's own affairs means that a person is suffering with a mental illness which so lessens the capacity of that person to use the customary self-control, judgment and discretion in the conduct of his affairs and social relations as to make it necessary, or advisable, for him to be under treatment, care, supervision, guidance or control." Petitioner's exception on this point is also without merit. The definition used by the court is substantially in the language prescribed by G.S. 35-1.1 and is therefore a valid instruction, especially since there was no evidence of any mental incapacity except that which arose from the cerebral hemorrhage. A cerebral hemorrhage, such as that suffered by the respondent, is a mental illness within the terms of the statute and its application to the facts in this case. *Bailey v. Insurance Co.,* 222 N.C. 716, 24 S.E. 2d 614; *McGregor v. Assurance Corp.,* 214 N.C. 201, 198 S.E. 641.

A charge must always be considered in its entirety and with a view to a harmonization of all of its component parts. *White v. Hines,* 182 N.C. 275, 109 S.E. 31; *Sulton v. Melton,* 183 N.C. 369, 111 S.E. 630; *Mewborn v. Rudisill Mine, Inc.,* 211 N.C. 544, 191 S.E. 28; *Ripple v. Stevenson,* 223 N.C. 284, 25 S.E. 2d 836.

We think that the charge of the court, when analyzed in the light of the applicable rules, fully complies with G.S. 1-180 and is free from reversible errror. The case has been submitted to two juries, both of which decided in favor of the respondent, and a careful perusal of the entire record fails to justify a new trial. Therefore, the verdict will be upheld and the judgment sustained.

No error.