NICHOLAS LaVECCHIA, Receiver for PAINE STATISTICAL CORPORA-
TION, a Corporation of New Jersey, v. THE NORTH CAROLINA
JOINT STOCK LAND BANK OF DURHAM.

(Filed 19 June, 1940.)

1. **Money Received § 1—Evidence held for jury in action against payee accepting corporate check in payment of personal obligation of its president.**

In an action by the receiver of a corporation to recover corporate funds allegedly used by the president of the corporation in purchasing land for his individual account, admissions by defendant that it entered into contracts for the sale of the land with the president individually, that in payment of the sum due upon the execution of the contracts it accepted checks drawn on the funds of the corporation by the president, together with evidence that the president had no authority to so use the corporate funds, that the corporation was not indebted to him, and that the transaction was not made for the corporation, *is held* sufficient to be submitted to the jury under the provisions of ch. 85, Public Laws of 1923, Michie's Code, 1864 (d) (q).

LaVecchia *v.* Land Bank.

2. **Money Received § 4—In this action under Michie's Code, 1864 (d) (q), the issues submitted are held sufficient.**

In this action by the receiver of a corporation to recover corporate funds allegedly used by the president of the corporation in purchasing lands for his individual account, issues relating to the making of the contracts for the sale of the land with the president individually, the delivery of corporate checks in payment of the president's personal obligation under the contracts, acceptance of the checks by defendant with knowledge that they were in payment of obligations under the contracts, and want of authority in the president to draw the checks, are sufficient to present all questions determinative of the rights of the parties.

3. **Evidence § 51—**

The competency of a witness to testify as an expert is a question primarily addressed to the sound discretion of the court, and its discretion is ordinarily conclusive.

4. **Evidence § 48d—**

An accountant, found by the court to be an expert, may testify from his personal examination of the books and records of a corporation that a corporate check given in partial payment for lands was drawn on funds derived from sale of customers' securities and from cash received from customers, that there was no indication that the president had authority to purchase the land or that the corporation was indebted to him or had authorized any loan of corporate funds to him, and that the corporate books did not disclose the purchase of any land by the corporation.

5. **Trial § 39—**

Where the issues submitted are sufficient to present all determinative facts in dispute and to afford the parties opportunity to introduce all pertinent evidence and to apply it fairly, the refusal to submit other issues tendered will not be held for error.

6. **Trial § 37—**

Objection to the issues submitted cannot be sustained when they present to the jury all determinative facts in dispute and afford the parties opportunity to introduce all pertinent evidence and to apply it fairly.

7. **Trial § 27b—**

While ordinarily a verdict may not be directed in favor of the party having the burden of proof, when only one inference can be drawn from the facts admitted or established, the court may draw the inference and peremptorily instruct the jury.

8. **Money Received § 4—**

Where defendant admits that it entered into a contract for the sale of lands to an individual, that in satisfaction of the obligations thereunder it accepted checks on corporate funds drawn by the individual as president of the corporation, and all the evidence tends to show that the individual was without authority to draw the checks, a peremptory instruction in favor of the receiver of the corporation is not error.

Appeal by defendant from *Olive, Special Judge,* at February-March Term, 1940, of Durham.

Civil action to recover for moneys of Paine Statistical Corporation, of New Jersey, alleged to have been wrongfully appropriated and used by John Overton Paine in paying personal debt to defendant.

This case came to this Court on former appeal from order refusing to allow motion of plaintiff for judgment on pleadings, 215 N. C., 73, 1 S. E. (2d), 119, and was considered on petition to rehear, 216 N. C., 28, 3 S. E. (2d), 276. There the Court held that plaintiff was not entitled, as a matter of law, to judgment on the pleadings for there was a denial of "a breach of his obligation as fiduciary."

Plaintiff alleges that on 3 and 4 March, 1937, John Overton Paine, in his individual capacity, entered into four certain contracts to purchase from the defendant four tracts of land situate in North Carolina, at the price of $36,625.00, payable one-fifth on execution of the contracts, and balance in eight annual installments; that as a payment on the purchase price of said lands John Overton Paine delivered to defendant two checks, one dated 3 March, 1937, for $5,500.00, drawn on Union National Bank, Newark, New Jersey, and the other dated 4 March, 1937, for $1,825.00, on Caldwell National Bank, Caldwell, New Jersey, each drawn in the name of "Paine Statistical Corporation, J. O. Paine, President," and payable to the order of defendant; that, in giving said checks of Paine Statistical Corporation as payments for his individual transactions, John Overton Paine misappropriated and wrongfully and unlawfully used funds of the corporation, of which fact defendant had notice in that it accepted the checks drawn on Paine Statistical Corporation, by J. O. Paine in his capacity as an officer of the corporation, which fully appeared upon the face of the checks, and that by so accepting the checks defendant participated in the misappropriation and wrongful use of the funds of the corporation and wrongfully received and now unlawfully withholds such funds, although demands for their return have been made by plaintiff; and that in contracting with defendant as above set forth John Overton Paine acted without the knowledge, authority or permission of Paine Statistical Corporation, and wholly in violation of his trust as an officer of the corporation.

Defendant, in answer, admits that on or about 1 March, 1937, it entered into certain contracts for the sale of real estate with John Overton Paine; that he paid 20 per cent of the agreed purchase price . . . "and in payment of said amount delivered to the defendant two checks of the Paine Statistical Corporation signed by John Overton Paine, President, and presumably they were in words and figures as indicated . . . in the complaint"; . . . and that it "accepted the checks of the Paine Statistical Corporation signed by John Overton Paine, President," but denies the remainder of allegations above set forth. For a further defense defendant avers that, on or about 2 March, 1937, through its duly authorized agents and officers, and in good faith, it sold

to John Overton Paine four tracts of land and entered into contracts with respect thereto referred to in the complaint; that John Overton Paine made the 20 per cent cash payment in accordance with his agreement and entered into possession of the land under certain agreements with respect to receiving of rents and payment of taxes and insurance; that he received the rents but failed to pay the taxes and insurance; that one of the tracts was sold to John Overton Paine through a broker to whom defendant paid a commission; and that defendant has been, and now stands able, ready and willing to carry out its agreement with John Overton Paine to execute deeds for said four tracts of land upon the payment of the purchase money due to defendant under said contracts.

Upon the trial below plaintiff introduced in evidence the admission of defendant, the original contracts which defendant then produced, the two checks, deposition of Andrew J. Markey, Assistant Attorney-General of the State of New Jersey in charge of the securities division of the Attorney-General's office, by whom, without objection, the minute book of the Paine Statistical Corporation was identified—the minute book being offered in evidence over objection by defendant—and deposition of Morris M. Beiner, certified public accountant of the State of New Jersey. Testimony of the witness Beiner, upon examination in chief, tends to show that: He was personally in charge of investigation and audit of the books and records of Paine Statistical Corporation for firm which was designated and appointed for the purpose by the court of chancery in the receivership proceeding, made a complete examination of the books and records, and prepared a statement of assets and liabilities of the corporation as of 18 February, 1939. As of that date the aggregate amount of assets was $77,070.73, and of claims filed by creditors with receiver $362,000.00. The assets included a claim in the amount of $7,325.00 against the defendant. The nature of the business was buying and selling of securities and rendering a stock quotation service. Under the plan for conducting its business the corporation received from customers deposits of cash or securities which were used as collateral for the purchase of additional securities for the customers. In practically every instance the securities deposited by the customers were immediately disposed of for cash and the cash received for the customers was taken in and mingled with the funds received from the sale of these securities. All money on deposit in the bank account of Paine Statistical Corporation at the Union National Bank and the Caldwell National Bank represented the cash received from customers, together with the proceeds received by the Paine Statistical Corporation as a result of the sale of securities deposited by customers with the corporation as collateral. The check of 3 March, 1937, for $5,500 drawn on Union National Bank, as well as the check of 4 March, 1937, on Caldwell National Bank, payable to the order of defendant, were drawn on the

funds of the corporation so deposited by the corporation. Neither the books nor records reflect the purchase or ownership of any real estate in North Carolina, nor do they contain any statement or indication of any authority or directions to John Overton Paine to purchase for the corporation any property in North Carolina, or that the corporation was indebted to him in any amount, or that it loaned any money, or authorized the loan of any corporate funds to him. The only record of the checks in question is the stub of the check book. Upon examination the minute book does not contain record authorizing John Overton Paine to use the funds of the corporation to purchase any real estate in North Carolina. (When the deposition was taken defendant entered objection to each question by which the foregoing evidence was elicited.)

Defendant offered no evidence.

Defendant reserved exception to refusal of court (1) to grant its motion for judgment as in case of nonsuit, and (2) to submit issues tendered by it.

The case was submitted to the jury upon these issues:

"1. Did J. O. Paine, as an individual, and the North Carolina Joint Stock Land Bank of Durham, N. C., enter into the four contracts marked Exhibits 4, 5, 6 and 7, as alleged in the complaint?

"2. If so, did J. O. Paine, as an officer of the Paine Statistical Corporation, execute and deliver to the North Carolina Joint Stock Land Bank of Durham, North Carolina, the two checks for $5,500 and $1,825 marked Exhibits 2 and 3, in payment of the cash payments due the defendant Land Bank under said contracts?

"3. If so, did the North Carolina Joint Stock Land Bank of Durham, N. C., accept said checks of the Paine Statistical Corporation with the actual knowledge that they represented the initial payments on said contracts?

"4. Was J. Overton Paine authorized by the Paine Statistical Corporation to draw or deliver said checks to the defendant North Carolina Joint Stock Land Bank?

"5. What amount, if any, is the plaintiff entitled to recover of the defendant?"

Defendant excepts to submission of third and fourth issues.

From judgment upon adverse verdict defendant appeals to Supreme Court, and assigns error.

*Victor S. Bryant, John D. McConnell, and W. A. Leland McKeithen for plaintiff, appellee.*

*J. S. Patterson and S. C. Brawley for defendant, appellant.*

WINBORNE, J. The questions involved on this appeal, as stated by appellant, relate to rulings of the court below in these respects: (1) In

refusing to grant its motion for judgment as in case of nonsuit; (2) in overruling objections to the testimony of the witness Beiner; (3) in refusing to submit issues tendered by it; (4) in submitting the third and fourth issues; and (5) in instructing the jury peremptorily. After a full and careful consideration we find no error in any of these rulings.

(1-2) The plaintiff is proceeding under the provisions of the Uniform Fiduciaries Act, Public Laws of 1923, ch. 85; Michie's Code, 1935, sec. 1864 (d) to (q). Similar acts have been passed by fourteen other states, including the District of Columbia. It is said that the purpose of the acts is to establish uniform and definite rules in the place of diverse and indefinite rules, relating to "constructive notice" of breaches of fiduciary obligations.

At the outset it is noted that in section one of the act it is declared that unless the context or subject matter otherwise requires (a) the word "fiduciary" includes, among others named, "officer of a corporation, public or private," (b) the word "person" includes "a corporation," and others named; and (c) the word "principal" includes any person to whom a fiduciary as such owes an obligation.

Plaintiff invokes the provisions of section five of the act, particularly the latter part thereof. For practical application to the case in hand that portion of the act, paraphrased, provides: That if a check is drawn in the name of his principal by a fiduciary, the creditor or other payee is liable to the principal (1) if such check is payable to a personal creditor of the fiduciary and delivered to the creditor in payment of a personal debt of the fiduciary to the actual knowledge of the creditor, or (2) is drawn and delivered in any transaction known by the payee to be for the personal benefit of the beneficiary, (3) if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the check.

Applying this portion of the act to the factual situation in hand, defendant admits that it entered into contracts for the sale of certain lands to John Overton Paine, and that in payment of the amounts payable on execution of the contracts, John Overton Paine delivered to defendant and it accepted two checks drawn in the name of Paine Statistical Corporation, by John Overton Paine, President, and payable to defendant. This admission brings defendant within the purview of the first and second paragraphs of section five as above paraphrased. Furthermore, in the further defense defendant avers that it, in good faith, sold the lands to John Overton Paine, that he went into possession and collected rents and that it stands ready to carry out the transactions with him. Is there, then, any evidence that the "fiduciary" John Overton Paine in fact committed a breach of his obligation as fiduciary, that is, as an officer of Paine Statistical Corporation, in so drawing or delivering the two checks to defendant? The testimony of the certified public

accountant, Beiner, is such evidence. It tends to show that the books and records do not reflect the purchase by the corporation of any land in North Carolina, nor do they contain any statement or indication of any authority to John Overton Paine to purchase any such land for the corporation, or otherwise, or that the corporation was indebted to him in any amount, or that it loaned any moneys or authorized the loan of any corporate funds to him; and that the checks were actually drawn on bank accounts of the corporation in which it had deposited cash received from customers and funds derived from sale of customers' securities.

The evidence further tends to show that the nature and course of the business of Paine Statistical Corporation was such as not to indicate a relationship from which implied authority in John Overton Paine to draw the checks for his personal use may be inferred. But, defendant contends that the testimony of the witness Beiner is incompetent.

In this connection it is noted that the court below, without objection, finds and holds the witness to be an expert accountant. The competency of a witness to testify as an expert is a question primarily addressed to the sound discretion of the court, and his discretion is ordinarily conclusive. *S. v. Wilcox,* 132 N. C., 1120, 44 S. E., 625; *Shaw v. Handle Co.,* 188 N. C., 222, 124 S. E., 325; *Liles v. Pickett Mills,* 197 N. C., 772, 150 S. E., 363; *S. v. Brewer,* 202 N. C., 187, 162 S. E., 363; *S. v. Cofer,* 205 N. C., 653, 172 S. E., 176; *Hardy v. Dahl,* 210 N. C., 530, 187 S. E., 788.

The witness being an expert accountant, his testimony, based upon personal examination of the books and records of the corporation, is clearly competent. *S. v. Hightower,* 187 N. C., 300, 121 S. E., 616; *Loan Assn. v. Davis,* 192 N. C., 108, 133 S. E., 530; *Bank v. Crowder,* 194 N. C., 331, 139 S. E., 604; *S. v. Maslin,* 195 N. C., 537, 143 S. E., 3; *S. v. Rhodes,* 202 N. C., 101, 161 S. E., 722; *S. v. Brewer, supra.*

Having held that the testimony of the witness Beiner is competent and admissible, it is deemed unnecessary to consider the contention of plaintiff that the exceptions relating thereto are not timely entered in accordance with the provisions of C. S., 590. Yet, let it not be understood that the exceptions are timely entered.

(3-4) The issues submitted are sufficient to present to the jury proper inquiries as to all determinative facts in dispute, as well as to afford the parties opportunity to introduce all pertinent evidence and to apply it fairly. Hence, there is no error in refusing to submit the issues tendered by defendant. *Saieed v. Abeyounis,* 217 N. C., 644; *Hill v. Young,* 217 N. C., 114, 6 S. E. (2d), 840, and cases cited. Therefore, the objection to the submission of the third and fourth issues is untenable.

5. While it is true as a general principle of law that the trial judge cannot direct a verdict in favor of the party upon whom rests the burden of proof, but "if the facts are admitted or established, and only one

inference can be drawn from them, the judge may draw the inference and so direct the jury." McIntosh, North Carolina P. & P., 632. In the present case the admissions of defendant virtually cover the facts sought to be elicited by the first, second and third issues. As to the fourth issue, the evidence is all one way, and is susceptible of only one inference.

In the judgment below we find

No error.